Matthew G. Berkowitz (SBN 310426)
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
Email: matthew.berkowitz@sheaman.com

Thomas R. Makin (admitted *Pro Hac Vice*)
David J. Cooperberg (admitted *Pro Hac Vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.848.4000
Email: thomas.makin@shearman.com
        david.cooperberg@shearman.com

L. Kieran Kieckhefer (SBN 251978)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
Fax: 415.616.1339
Email: kieran.kieckhefer@shearman.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RED HAT, INC., | Case No.: 4:22-cv-05289-YGR |
| Plaintiff, | **Hon. Judge Yvonne Gonzalez Rogers** |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 12(B)(2) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| VALTRUS INNOVATIONS, LTD., | |
| Defendant. | Date:      January 17, 2023<br>Time:      2:00 p.m.<br>Location: Courtroom 1 – FOURTH FLOOR |
| | *[Declarations of Angela Quinlan, Paul Riley, and Matthew Berkowitz; and Proposed Order filed concurrently herewith]* |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 17, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard before The Honorable Judge Yvonne Gonzalez Rogers in the United States District Court for the Northern District of California in the Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, Defendant Valtrus Innovations, Ltd. ("Valtrus" or "Defendant") will and hereby does move the Court, for an order dismissing the Complaint filed by Plaintiff Red Hat, Inc. ("Red Hat" or "Plaintiff") in its entirety pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure; and, in the alternative, Valtrus moves for an order dismissing Red Hat's claim for tortious interference with contractual relations pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is made on the grounds that the Court lacks personal jurisdiction over Valtrus and that Red Hat has failed to state a claim for tortious interference with contractual relations.

Valtrus is an Irish entity with its principal place of business in Dublin, Ireland. Valtrus is not registered to conduct business in California; does not have a registered agent for service of process in California; does not have offices, employees, Board Members, service providers (other than lawyers), contractors, equipment, bank accounts, or other assets in California; is not subject to and has never paid taxes in California; does not manufacture or sell products in California; has never granted a post-acquisition license of any patent at issue to a resident of this district; has not conducted live, in-person meetings in this district concerning any of its patents; has not entered into California for any business reason, including for the purpose of signing contracts; does not recruit employees in California; and does not own, lease, or rent any property in California. Further, no lawsuit has ever been filed by Valtrus in California for any reason. Valtrus's only lawsuit in the United States is a patent infringement litigation against Google in the District Court for the Northern District of Texas.

An exercise of personal jurisdiction would also be unduly burdensome for Valtrus given that: (i) it has no employees in the United States, (ii) its parent company, Key Patent Innovations, Ltd. ("KPI," another Irish entity), has no employees in the United States; (iii) the company with which KPI contracts to provide patent licensing consulting services to Valtrus—Patent Platform Services

LLC ("PPS")—is a Delaware entity with a principal place of business in Frisco, Texas; and (iv) the PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Texas, New Jersey, and Pennsylvania—not California. Nor does this district have a unique or particular interest in adjudicating this dispute, as Red Hat is a North Carolina company and therefore is also a non-resident.

For all of these reasons, exercising personal jurisdiction over Valtrus would not comport with due process. The present action should be dismissed.

With respect to Red Hat's tortious interference with contractual relations allegations, even if assumed to be true, they fail to establish anything beyond the mere, and improbable, possibility that the elements required to sustain its claim have been met. Red Hat does not specifically identify: any contracting parties, whether Valtrus approached any such party with an offer to license, or any breach or disruption to any specific contract (or for that matter, any other damage). In fact, Red Hat fails to specifically identify a single customer that has availed itself of Red Hat's optional Open Source Assurance Program—the contract with which Valtrus allegedly has interfered—under which Red Hat apparently assumes certain defense or indemnification duties. Further, Red Hat's allegations regarding Valtrus's knowledge and intentional acts, as well as Red Hat's allegations of actual breach or disruption, implausibly rest on (i) presumed knowledge of the contract by Valtrus and (ii) alleged third parties' enforcement—not breach—of their contracts with Red Hat. If this action is not dismissed for want of personal jurisdiction, Red Hat's tortious interference claim should be dismissed.

The Motion will be and is based on this Notice of Motion and Motion, the accompanying Memorandum, the accompanying declarations, the pleadings and papers filed herein, as well as upon such and other further matters, papers, and arguments as may be presented to the Court.

Dated:  December 7, 2022                    Respectfully submitted,

                                            By: */s/ Matthew G. Berkowitz*
                                                Matthew G. Berkowitz
                                                SHEARMAN & STERLING LLP

                                            *Attorney for Defendant*

1
2

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................................ iii

TABLE OF AUTHORITIES ........................................................................................................ iv

STATEMENT OF THE ISSUES TO BE DECIDED...................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

I.        PRELIMINARY STATEMENT .....................................................................................1

II.       THE PARTIES...................................................................................................................3

III.      LEGAL STANDARDS .....................................................................................................5

          A.        Exercising Personal Jurisdiction ......................................................................5

          B.        Pleading Requirements Under Rule 12(b)(6) ..................................................7

IV.       ARGUMENT ......................................................................................................................8

          A.        This Court Lacks Personal Jurisdiction Over Valtrus..................................8

          B.        Red Hat Has Failed to State a Claim for Intentional Interference with Contractual
                    Relations ............................................................................................................17

V.        CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

Page

**Cases**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358 (Fed. Cir. 2012)....................................6

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977) ......................................6

*Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368 (Fed. Cir. 2022)....................................14, 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................13

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) ...............5, 10, 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008) .............................5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................7

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006) ..........................................................................................................................6, 10

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017)..................................5, 6, 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..................................................................6

*Campbell Pet Co. v. Miale*, 541 F.3d 879 (Fed. Cir. 2008)...........................................................8

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..........................................................................6, 8

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998)................................5

*Davis v. Nadrich*, 174 Cal. App. 4th 1, 94 Cal. Rptr. 3d 414 (2009) .......................................7, 17

*Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004)...........................................................................................................6

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ........................................................7

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367 (Fed. Cir. 2004) ............................................................................................................................18

*Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915 (2011)...............................5, 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ..............................9, 10

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ......................5, 8

*Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000 (9th Cir. 2011) .....................................................7

*Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD,
2022 U.S. Dist. LEXIS 121213 (N.D. Cal. July 8, 2022)....................................11, 13, 15, 16

*Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-cv-04653-BLF, 2022 U.S. Dist.
LEXIS 16359 (N.D. Cal. Jan. 28, 2022)......................................................................11

*Matthews Intern. Corp. v. Biosafe Engineering, LLC*, 695 F. 3d 1322 (Fed. Cir.
2012)............................................................................................................................18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ....................6, 7

*New World Int'l, Inc. v. Ford Glob. Techs.*, LLC, 859 F.3d 1032 (Fed. Cir. 2017) ............6, 10, 12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir.
2008) ...........................................................................................................................12

*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) .........................................8

*PNY Techs., Inc. v. Miller, Kaplan, Arase & Co, LLP*, No. 15-cv-01728-MMC,
2016 U.S. Dist. LEXIS 133837 (N.D. Cal. Sep. 28, 2016) .......................................19

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir.
1998) ...........................................................................................................................16

*Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147 (Fed. Cir. 2021).........................15, 17

*Trindade v. Reach Media Grp., LLC*, No. 12-CV-4759-PSG, 2013 U.S. Dist.
LEXIS 107707 (N.D. Cal. July 31, 2013) ...............................................................7, 18

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).................................14

*Xerox Corp. v. Monument Peak Ventures, LLC*, No. 20-CV-6263-FPG, 2021 U.S.
Dist. LEXIS 165011 (W.D.N.Y. Aug. 31, 2021).......................................................16

**Statutes**

28 U.S.C. §1782.................................................................................................................13

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Whether this Court lacks personal jurisdiction over Valtrus Innovations, Ltd., an Irish entity with no place of business or employees based in California, in the instant action for declaratory judgment and tortious interference.

2. Whether Red Hat has stated a plausible claim for relief for tortious interference with contractual relations.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

The instant action, which seeks a determination that Red Hat—a North Carolina company—does not infringe, directly or indirectly, certain Valtrus patents, and which further asserts a tortious interference claim against Valtrus, must be dismissed because this Court lacks personal jurisdiction over Valtrus.

The sole allegations relied on by Red Hat in its Complaint to establish this Court's personal jurisdiction over Valtrus are:

1. Valtrus sending notice of infringement to certain—*unnamed in the Complaint*—customers of Red Hat in this district;

2. Valtrus having follow-up communications and interactions with certain of these unnamed Red Hat customers in unspecified locations, some of which were allegedly "substantive";

3. Valtrus obtaining "several of the patents asserted" in those letters by contracting with a Hewlett Packard entity and signatory located in this District;[1] and

---

[1] The '204, '984, and '109 patents identified in Red Hat's Complaint were actually conveyed to Valtrus jointly by Hewlett Packard Enterprise Development LP ("HPED"), a Texas company with principal place of business in Houston, Texas, and Hewlett Packard Enterprise Company ("HPE"), a Delaware corporation identified as having a principal place of business in San Jose, California at the time of assignment; Declaration of Matthew G. Berkowitz ("Berkowitz Decl.") ¶ 3 (citing Ex. 1 thereto (public assignment record at USPTO)). The '471 patent identified in Red Hat's Complaint was conveyed to Valtrus indirectly by these same entities via OT Patent Escrow, LLC, a Delaware entity with principal place of business in Chicago, Illinois. Berkowitz Decl. ¶ 4 (citing Exs. 2 and 3 thereto (public assignment records at USPTO). On information and belief, HPE's principal place of business is now Spring, Texas. Berkowitz Decl. ¶ 5 (citing Ex. 4 thereto ("HPE celebrates grand opening of Houston headquarters")).

1

4.  Red Hat's factually-unsupported presumption that there is "An expectation by Valtrus of ongoing communications and interactions with inventors of certain asserted patents who are located in this District, as well as [with] expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing conduct."

Dkt. 1 ("Complaint") ¶ 7.

These vague allegations are insufficient for this Court to exercise personal jurisdiction over Valtrus in accordance with standards of federal due process and the California long-arm statute, given the undisputable facts.

Valtrus is an Irish entity with its principal place of business in Dublin, Ireland. Valtrus is not registered to conduct business in California; does not have a registered agent for service of process in California; does not have offices, employees, Board Members, service providers (other than lawyers), contractors, equipment, bank accounts, or other assets in California; is not subject to and has never paid taxes in California; does not manufacture or sell products in California; has never granted a post-acquisition license of any patent at issue to a resident of this district; has not conducted live, in-person meetings in this district concerning any of its patents; has not entered into California for any business reason, including for the purpose of signing contracts; does not recruit employees in California; and does not own, lease, or rent any property in California. Further, no lawsuit has ever been filed by Valtrus in California for any reason. Valtrus's only lawsuit in the United States is a patent infringement litigation filed by Valtrus against Google in the District Court for the Northern District of Texas.

An exercise of personal jurisdiction would also be unduly burdensome for Valtrus given that: (i) it has no employees in the United States, (ii) its parent company, Key Patent Innovations, Ltd. ("KPI," another Irish entity), has no employees in the United States; (iii) the company with which KPI contracts to provide patent licensing consulting services to Valtrus—Patent Platform Services LLC ("PPS")—is a Delaware entity with a principal place of business in Frisco, Texas; and (iv) the PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Texas, New Jersey, and Pennsylvania—not California. Declaration of Paul Riley

("Riley Decl.") ¶ 5. Nor does this district have a unique or particular interest in adjudicating this dispute, as Red Hat is a North Carolina company and therefore is also a non-resident.

Accordingly, Red Hat's Complaint for Declaratory Judgment should be dismissed for lack of personal jurisdiction.

With respect to Red Hat's tortious interference with contractual relations allegations, even if assumed to be true, they fail to establish anything beyond the mere, and improbable, possibility that the elements required to sustain its claim have been met. Red Hat does not specifically identify: any contracting parties, whether Valtrus approached any such party with an offer to license, or any breach or disruption to any specific contract (or for that matter, any other damage). In fact, Red Hat fails to specifically identify a single customer that has availed itself of Red Hat's optional Open Source Assurance Program—the contract with which Valtrus allegedly has interfered—under which Red Hat apparently assumes certain defense or indemnification duties. Further, Red Hat's allegations regarding Valtrus's knowledge and intentional acts, as well as Red Hat's allegations of actual breach or disruption, implausibly rest on (i) presumed knowledge of the contract by Valtrus and (ii) alleged third parties' enforcement—not breach—of their contracts with Red Hat. If this action is not dismissed for want of personal jurisdiction, Red Hat's tortious interference claim should be dismissed.

## II.   THE PARTIES

Valtrus is the sole owner of all rights and title in and to U.S. Patent Nos. 8,230,204 ("the '204 Patent"), 7,620,984 ("the '984 Patent"), 7,383,471 ("the '471 Patent"), and 7,533,109 ("the '109 Patent") (collectively, "the Challenged Patents"). Complaint, ¶ 19.

Valtrus is an Irish entity with its principal place of business at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland. Complaint, ¶ 5; Declaration of Angela Quinlan ("Qunilan Decl.") ¶ 3. Valtrus's Managing Member is Angela Quinlan, who resides in Wicklow, Ireland. *Id*. ¶ 2. Valtrus's other board members are Máiréad Lyons and Glen Gibbons, who both reside in Ireland; Paul Riley, who resides in Pennsylvania; and Paul Seaman, who resides in New Jersey. *Id*. ¶ 4. Valtrus has no U.S. employees. *Id*. ¶ 5.

NOTICE OF MOTION AND MOTION TO DISMISS UNDER            CASE NO.: 4:22-cv-05289-YGR
RULES 12(B)(2) AND 12(B)(6); MEMORANDUM

Valtrus is not registered to conduct business in California; does not have a registered agent for service of process in California; does not have offices, employees, Board Members, service providers (other than lawyers), contractors, equipment, bank accounts, or other assets in California; is not subject to and has never paid taxes in California; does not manufacture or sell products in California; has never granted a post-acquisition license of any patent at issue to a resident of this district; has not conducted live, in-person meetings in this district concerning any of its patents; has not entered into California for any business reason, including for the purpose of signing contracts; does not recruit employees in California; and does not own, lease, or rent any property in California. Quinlan Decl. ¶ 6. Further, no lawsuit has ever been filed by Valtrus in California for any reason. *Id*. ¶ 7. Valtrus's only lawsuit in the United States is a patent infringement litigation filed by Valtrus against Google in the District Court for the Northern District of Texas. *Id*. ¶ 8. Valtrus's parent, KPI, is also an Irish entity with a principal place of business in Dublin, Ireland and has no employees in the United States. *Id*. ¶ 9. KPI contracts with PPS, a Delaware entity with a principal place of business in Frisco, Texas, to provide licensing consulting services to Valtrus. *Id*. ¶ 10.

The PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Pennsylvania, New Jersey, and Texas—not in California. Riley Decl. ¶ 5. These employees include Jin-Meng Ho, PPS Vice President and IP Fellow of PPS and primary technical consultant regarding Valtrus patents, and Kalpana ("Kapu") Kumar, PPS's Chief Operating Officer and primary patent licensing consultant regarding Valtrus patents, who each reside in Texas (Ms. Kumar also maintains a second home in New Jersey). *Id*. ¶ 6.

After filing its Complaint, Red Hat attempted to serve it on Valtrus by serving it personally on Ms. Quinlan in Ireland, Ms. Kapu at her second home in New Jersey, Mr. Seaman in New Jersey, and Mr. Riley in Pennsylvania. Dkt. No. 21 at 1, 5, 8; Riley Decl. ¶¶ 2, 6; Quinlan Decl. ¶ 4.

Red Hat is a corporation existing under the laws of Delaware with its principal place of business located in Raleigh, North Carolina. Complaint, ¶ 4.

1  ### III.     LEGAL STANDARDS

2  #### A.     Exercising Personal Jurisdiction

3  Rule 12(b)(2) requires a district court to dismiss an action when the Court lacks personal

4  jurisdiction over a defendant. In a case involving patent claims, like the present one, Federal Circuit

5  law governs the inquiry into personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co*., 552

6  F.3d 1324, 1340 (Fed. Cir. 2008) ("[B]ecause the non-patent issues in this case are 'intimately linked

7  to patent law,' Federal Circuit law regarding due process must be applied to the question of personal

8  jurisdiction over [Defendant] with respect to all claims.") (citation omitted).

9  Personal jurisdiction exists for an out-of-state defendant when the forum state's long-arm

10  statute permits service of process and the assertion of personal jurisdiction does not violate federal

11  due process. *Avocent Huntsville Corp.*, 552 F.3d at 1329. Because California's long-arm statute

12  permits service of process to the full extent allowed by the due-process clause of the U.S.

13  Constitution, the court's inquiry centers on whether jurisdiction comports with federal due process.

14  *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998).

15  Under the due-process clause, courts have recognized "two types of personal jurisdiction:

16  'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked')

17  jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citations

18  omitted).

19  A court may exercise general jurisdiction over a corporate defendant only if the corporation's

20  "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in

21  the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785 (2017) (citing

22  *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915, 919 (2011)).

23  Where a defendant is not subject to general personal jurisdiction in the forum state, a district

24  court may nonetheless exercise specific personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene

25  Tech. Ltd*., 566 F.3d 1012, 1018 (Fed. Cir. 2009). The due-process inquiry for specific jurisdiction is

26  whether the defendant has sufficient minimum contacts with the forum such that the assertion of

27  jurisdiction in the forum "does not offend traditional notions of fair play and substantial justice." *Int'l

28  Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citations omitted);

1   *New World Int'l, Inc. v. Ford Glob. Techs.*, LLC, 859 F.3d 1032, 1037 (Fed. Cir. 2017). "In order for

2   a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's

3   contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up). "In other words, there must

4   be an affiliation between the forum and the underlying controversy, principally, an activity or an

5   occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*.

6   "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected

7   with, the very controversy that establishes jurisdiction." *Id*.

8         To establish specific jurisdiction, the plaintiff must demonstrate that "(1) the defendant

9   purposefully directs its activities at residents of the forum, (2) the claim arises out of or relates to

10  those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge*

11  *Pharm., Inc. v. Metabolite Labs., Inc*., 444 F.3d 1356, 1363 (Fed. Cir. 2006). Whether assertion of

12  personal jurisdiction is reasonable and fair is governed by the *Burger King* factors, which include

13  "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's

14  interest in obtaining convenient and effective relief," "the interstate judicial system's interest in

15  obtaining the most efficient resolution of controversies," and the "shared interest of the several States

16  in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S.

17  462, 477 (1985),

18        The plaintiff bears the burden of making a *prima facie* showing that the defendant is subject to

19  personal jurisdiction. *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003),

20  *cert. denied*, 540 U.S. 1111 (2004). In meeting this burden, the plaintiff cannot "simply rest on the

21  bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or

22  otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc*., 551 F.2d 784,

23  787 (9th Cir. 1977). And while the court must accept uncontested allegations as true, it need not

24  consider "bare formulaic accusations" that a defendant maintains sufficient contacts with the forum

25  state. *AFTG-TG, LLC v. Nuvoton Tech. Corp*., 689 F.3d 1358, 1365 (Fed. Cir. 2012).

26        In addition, the court also "may not assume the truth of allegations in a pleading which are

27  contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir.

28  2011).

**B.    Pleading Requirements Under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, (2007)). To be "plausible on its face," a plaintiff's factual allegations must support a reasonable inference of liability stronger than a mere possibility; otherwise, the claim must be dismissed. *Iqbal*, 556 U.S. at 678-79. In other words, plaintiffs must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). However, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Courts should not assume facts not alleged. *Iqbal*, 556 U.S. at 679. Nor must the court accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Also, as noted above, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo*, 647 F.3d at 1223.

To state a claim for intentional interference with contractual relations under California law, a plaintiff must adequately plead facts sufficient to plausibly establish: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10, 94 Cal. Rptr. 3d 414, 421 (2009) (internal quotation and citation omitted); *see also Trindade v. Reach Media Grp., LLC*, No. 12-CV-4759-PSG, 2013 U.S. Dist. LEXIS 107707, at *51 (N.D. Cal. July 31, 2013).

IV.   **ARGUMENT**

   A.   **This Court Lacks Personal Jurisdiction Over Valtrus**

      This Court does not have personal jurisdiction over Valtrus. General jurisdiction does not exist because Valtrus is not "at home" in California. Specific jurisdiction is also lacking, both because Valtrus does not have the requisite minimum contacts with the district, and because the exercise of specific jurisdiction would not comport with traditional notions of fair play and substantial justice.

      1.   General Jurisdiction Does Not Exist Over Valtrus Because Valtrus is Not "At Home" in California

      General jurisdiction exists only when the defendant's contacts with the forum are so "continuous and systematic" that the defendant is "essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citing *Goodyear*, 564 at 919). "[S]poradic and insubstantial contacts with the forum state . . . are not sufficient." *Campbell Pet Co. v. Miale*, 541 F.3d 879, 884 (Fed. Cir. 2008). Moreover, "even continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear*, 564 U.S. at 927 (quoting *Int'l Shoe*, 326 U.S. at 318). Thus, the plaintiff bears a high burden to establish general jurisdiction. *Avocent*, 552 F.3d at 1330.

      Although there is no concrete test for determining what contacts support exercise of general jurisdiction, the Supreme Court has held that the following contacts, taken together, satisfy due process: (1) maintaining an office in the forum state; (2) keeping company files and conducting directors' meetings in that office; (3) carrying on correspondence relating to the business in that office; (4) distributing salary checks drawn on active bank accounts located in the forum state; (5) engaging a bank from the forum state to act as a transfer agent; and (6) supervising from the forum state policies dealing with the rehabilitation of the corporation's properties outside the forum state. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952); *Daimler AG v. Bauman*, 571 U.S. 117, 129 (2014). The Supreme Court has also advised that the following factors may be relevant to the analysis: (1) having authorization to do business in the forum state; (2) having an agent for service of process within the forum; (3) selling products and soliciting business in the forum; (4) signing contracts in the forum; (5) recruiting employees from the forum state; and (6) owning real or personal

8

property in the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, (1984).

None of these factors are present here. *See generally* Complaint.

It is undisputed that Valtrus is an Irish entity with its principal place of business located in Dublin, Ireland. Complaint, ¶ 5; Quinlan Decl. ¶ 3. Valtrus has no U.S. employees and its Board members reside outside this district. *Id*. ¶¶ 2, 4, and 5. Valtrus is not registered to conduct business in California and, in fact, does no business and has filed no lawsuits in this district. *See* above at Section II; Quinlan Decl. ¶¶ 6–7. Similarly, Valtrus's parent, KPI, is an Irish entity with a principal place of business in Dublin, Ireland; and it has no employees in the United States. *Id*. ¶ 9. And, while KPI contracts with PPS to provide licensing consulting services to Valtrus, PPS is a Delaware entity with a principal place of business in Frisco, Texas. Riley Decl. ¶ 4. The PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Pennsylvania, New Jersey, and Texas—not in California. *Id*. ¶ 5.

Red Hat does not specifically explain which, if any, of its allegations could support general jurisdiction. Instead, with respect to both its patent declaratory judgment claims and its "interference" claim),[2] Red Hat points to the following as allegedly supporting jurisdiction: Valtrus sending notice of infringement to certain—*unnamed*—customers of Red Hat in the district; Valtrus having follow-up communications and interactions with certain of these *unnamed* customers in *unspecified* locations, some of which were allegedly "substantive"; Valtrus obtaining "several of the patents asserted" by contracting with a Hewlett Packard entity and signatory located in this District; and Red Hat's factually-unsupported speculation that there is "An expectation by Valtrus of ongoing communications and interactions with inventors of certain asserted patents who are located in this District, as well as [with] expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing conduct." Complaint, ¶ 7.

Red Hat's Complaint does not, and cannot, establish contacts that are so "continuous and systematic" as to render Valtrus "essentially at home" in California. *See Autogenomics, Inc.*, 566 F.3d

---

[2] As discussed further below in Section IV.B, Red Hat's tortious interference allegations entirely fail to state a claim.

9

1 at 1017 (holding that "sporadic" or "insubstantial" contacts are not sufficient to establish personal

2 jurisdiction). The allegations fall far short of what is required. *See Daimler*, 571 U.S. at 157

3 (defendant corporation with multiple offices, continuous operations, and billions of dollars in sales in

4 California was not "at home" there because California was neither the defendant corporation's

5 principal place of business nor its state of incorporation); *Helicopteros*, 466 U.S. at 416 (no general

6 jurisdiction over defendant in Texas where defendant did not have a place of business in Texas and

7 had never been licensed to do business in the state, even though defendant "[s]ent its chief executive

8 officer to Houston for a contract-negotiation session; accept[ed] into its New York bank account

9 checks drawn on a Houston bank; purchas[ed] helicopters, equipment, and training services from Bell

10 Helicopter for substantial sums; and sen[t] personnel to Bell's facilities in Fort Worth for training");

11 *Autogenomics*, 566 F.3d at 1017-18 (no general jurisdiction in California over nonresident patent

12 owner that did not have actual physical presence or license to do business in California—*even though*

13 owner had attended three conferences in California, had collaborative agreement with California

14 company, sold patented product in California that constituted about 1% of its revenue in year sold,

15 had granted non-exclusive license to patent to California company, and representatives for owner had

16 traveled to California to meet with representatives of plaintiff competitor to negotiate license).

17         2.   <u>Valtrus is Not Subject to Specific Personal Jurisdiction in California</u>

18         To establish specific jurisdiction, the plaintiff must demonstrate that "(1) the defendant

19 purposefully directs its activities at residents of the forum, (2) the claim arises out of or relates to

20 those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge*

21 *Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). The first two elements

22 alternately referred to as "minimum contacts." *New World Int'l*, 859 F.3d at 1037. Specific

23 jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation."

24 *Daimler*, 571 U.S. at 126. In the context of declaratory judgment actions against a patentee, "only

25 enforcement or defense efforts related to the patent … are to be considered for establishing specific

26 personal jurisdiction." *Autogenomics,* 566 F.3d at 1020; *see also New World Int'l*, 859 F.3d at 1040.

27                    a.    Red Hat has not—and cannot—meet its burden of alleging
28                         minimum enforcement and defense efforts in this district.

1    Red Hat cannot show that "(1) the defendant purposefully directs its activities at residents of

2    the forum, [and that] (2) the claim arises out of or relates to those activities."

3    With respect to both its declaratory judgment and "interference" claims in the Complaint, Red

4    Hat asks this Court to exercise personal jurisdiction over Valtrus based solely on allegations that:

5    Valtrus sent notices of infringement to certain—*unnamed*—customers of Red Hat in the district;

6    Valtrus had follow-up communications and interactions with certain of these *unnamed* customers in

7    *unspecified* locations, some of which were allegedly "substantive"; Valtrus obtained "several of the

8    patents asserted" by contracting with a Hewlett Packard entity and signatory located in this District;

9    and there is "An expectation by Valtrus of ongoing communications and interactions with inventors

10   of certain asserted patents who are located in this District, as well as [with] expected witnesses in this

11   District regarding Valtrus's patent infringement allegations and licensing conduct." Complaint, ¶ 7.

12   Red Hat does not, and cannot, assert that Valtrus has had communications with Red Hat in

13   this district or elsewhere, Quinlan Decl. ¶ 11, which alone should render inadequate Valtrus's alleged

14   contacts in this district. *Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-

15   EJD, 2022 U.S. Dist. LEXIS 121213, at *19 (N.D. Cal. July 8, 2022) ("[T]he Court notes that neither

16   [declaratory judgment] Plaintiff is a California resident nor are [declaratory judgment plaintiffs']

17   principal places of business located in California…. This alone distinguishes the present case from

18   the body of Federal Circuit decisions that analyze whether a defendant's notice or infringement letter

19   sent to a plaintiff would satisfy minimum contacts in plaintiff's home forum.").

20   Instead, Red Hat alleges that Valtrus has sent letters to certain *unnamed* customers of Red Hat

21   in this district, and has had "conversations" with certain of these customers.[3]  These vague allegations

22   fall far short of meeting Red Hat's burden of showing that Valtrus purposefully directed its activities

23   at residents of the forum. *Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-cv-04653-BLF, 2022 U.S.

24   Dist. LEXIS 16359, at *9 (N.D. Cal. Jan. 28, 2022) (finding general allegations of a patentee's

25

26

27   [3] Red Hat's failure to specifically name any customers in the district is curious in view of the fact
     that Red Hat has alleged certain specifics regarding alleged communications with such
28   customers, including identifying specific patents at the core of the communications. Complaint,
     ¶¶ 34, 41, 48, and 55.

1  licensing negotiations with entities in the district insufficient to establish the requisite minimum

2  contacts to support an exercise of personal jurisdiction).

3        Red Hat's remaining allegations do not make up the difference.

4        Red Hat alleges that several of the patents asserted by Valtrus in letters to unnamed customers

5  were obtained "by contracting with a Hewlett Packard entity and signatory located in this District."

6  Complaint, ¶ 7. But Red Hat does not specify which Hewlett Packard entity or what, if any, interest

7  was conveyed by such entity. And, in fact, according to public records, the identified patents were

8  conveyed jointly by Hewlett Packard Enterprise Development LP ("HPED"), a Texas company with

9  principal place of business in Houston, Texas and Hewlett Packard Enterprise Company, a Delaware

10  corporation now headquartered in Spring Texas. Berkowitz Decl. ¶¶ 3–5, Ex.'s 1-4. And, in any

11  event, patent acquisition activity has no bearing on whether this Court has personal jurisdiction over

12  Valtrus. When deciding the question of personal jurisdiction over a foreign patentee in a declaratory

13  judgment action such as this one, it is only the patentee's enforcement or defense efforts relating to

14  the challenged patent(s) that are to be given any weight in the minimum contact analysis.

15  *Autogenomics*, 566 F.3d at 1020; *see also New World*, 859 F.3d at 1040.

16        Also inconsequential to the minimum contacts analysis is Red Hat's factually-unsupported

17  presumption that Valtrus has an "expectation … of ongoing communications and interactions with

18  [*unnamed*] inventors of certain asserted patents who are located in this District, as well as [*unnamed*]

19  expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing

20  conduct." Complaint, ¶ 7. Valtrus has had no contact with the inventors of any Valtrus Patent, as

21  defined in paragraph seven of Red Hat's Complaint, or with "expected witnesses in this District

22  regarding Valtrus's patent infringement allegations and licensing conduct." Quinlan Decl. ¶ 13. In

23  fact, as of Red Hat's filing of this suit, and through to the present date, Valtrus has not brought any

24  actions in this, or any other district, for infringement of any of the patents that Red Hat identifies in

25  its Complaint. *Id*. And, of course, Red Hat's suit does not seek a finding of patent invalidity or

26  unenforceability; and an inventor's testimony is irrelevant to claim construction, *O2 Micro Int'l Ltd.*

27  *v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 n.3 (Fed. Cir. 2008). In other words, inventor

28

1  testimony is wholly irrelevant to this litigation, even if Valtrus had contacted them (which it did not).

2  All of this only underscores the purely speculative nature of Red Hat's allegations.

3  As discussed above, it is undisputed that Valtrus is an Irish entity with its principal place of

4  business located in Dublin, Ireland. Complaint, ¶ 5; Quinlan Decl. ¶ 3. Valtrus has no U.S. employees

5  and its Board members reside outside this district. *Id*. ¶ 2, 4, and 5. Valtrus is not registered to

6  conduct business in California and, in fact, does no business and has filed no lawsuits in this district.

7  *See* above at Section II; Quinlan Decl. ¶¶ 6–7. Similarly, Valtrus's parent, KPI, is an Irish entity with

8  a principal place of business in Dublin, Ireland; and it has no employees in the United States. *Id*. ¶ 9.

9  And, while KPI contracts with PPS to provide licensing consulting services to Valtrus, PPS is a

10  Delaware entity with a principal place of business in Frisco, Texas. Riley Decl. ¶ 4. The PPS

11  employees responsible for preparing and presenting claim charts for and licensing the patents at issue

12  reside in Pennsylvania, New Jersey, and Texas—not in California. *Id*. ¶ 5.

13  For all of these above reasons, Valtrus lacks the required minimum contacts, and Red Hat's

14  claims should be dismissed for lack of personal jurisdiction.

15  Red Hat's personal jurisdiction case is far weaker than other cases in which no personal

16  jurisdiction was found. For example, in *Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No.

17  19-cv-01389-EJD, 2022 U.S. Dist. LEXIS 121213 (N.D. Cal. July 8, 2022), this court found no

18  "purposeful availment" of this forum by patentee, and thus no personal jurisdiction over patentee,

19  despite: five years of patentee visiting the forum to discuss licensing; patentee's hiring of a U.S.

20  attorney and resident of the district as the "Director, Worldwide Licensing"; patentee's licensing

21  agreement and negotiations with a third-party forum resident; two of patentee's board members being

22  district residents; and patentee's previously availing itself of this district court by requesting judicial

23  assistance to compel documents pursuant to 28 U.S.C. § 1782. *Id*. at *32.

24          b.   Personal jurisdiction over Valtrus would not comport with fair
25               play and substantial justice.

26  "[T]he exercise of jurisdiction must be reasonable under the circumstances. The [*Burger*

27  *King*] factors relevant to such an analysis include "the burden on the defendant, the forum State's

28  interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief,

13

1    the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and

2    the shared interest of the several States in furthering fundamental substantive social policies." *Bristol-*

3    *Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1786 (2017) (internal citations and quotations

4    omitted).

5         As explained above, the only alleged contacts that Red Hat has identified that are theoretically

6    relevant to the specific personal jurisdiction inquiry are Valtrus's notice letters and licensing

7    communications with unspecified Red Hat customers in the district. Even if these licensing offers

8    were somehow deemed sufficient to establish the requisite minimum contacts for personal

9    jurisdiction, they are certainly insufficient to support a finding that personal jurisdiction would be fair

10   or reasonable under the circumstances.

11        The first *Burger King* factor, the burden on Valtrus of litigating in California, is of "primary

12   concern" in the reasonableness analysis. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

13   292 (1980). This factor weighs strongly against an exercise of personal jurisdiction.

14        Valtrus is an Irish entity, with no presence in California, as is its parent, KPI. Quinlan Decl.

15   ¶¶ 2–7, and 9. Red Hat has not alleged, and Valtrus has not participated in, any live in-person

16   meetings with Red Hat or its customers in this district. *Id*. ¶¶ 11–12. The Valtrus-related persons Red

17   Hat sought to serve with the Complaint reside in Pennsylvania, New Jersey, and Texas. Riley Decl.

18   ¶¶ 2, 6; Quinlan Decl. ¶ 4; Dkt. No. 21 at 1, 5, 8. Valtrus's primary technical consultant regarding

19   Valtrus patents and its primary patent licensing consultant regarding Valtrus patents both live in

20   Texas and work at PPS, a Delaware entity with a principal place of business in Frisco, Texas. Riley

21   Decl. ¶¶ 4–6. And, Valtrus's only lawsuit in the United States is a patent infringement litigation filed

22   by Valtrus in Texas against Google. Quinlan Decl. ¶¶ 7–8. Based on these facts, being haled into

23   court in California would impose a substantial burden on Valtrus, and one that was not reasonably

24   foreseeable. *Cf. Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1379-1380 (Fed. Cir. 2022) (finding

25   exercise of personal jurisdiction not unreasonably burdensome where defendant had traveled to forum

26   to meet plaintiff so as to establish a "territorial presence" that made suits there "reasonably

27   foreseeable.").

28

The second *Burger King* factor, California's interest in adjudicating the dispute, likewise weighs against an exercise of personal jurisdiction over Valtrus.

As discussed directly above, Valtrus is an Irish entity with no place of business in California. Red Hat's principal place of business is in North Carolina. Complaint, ¶ 4. Thus, California has essentially no interest in this action. *See Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD, 2022 U.S. Dist. LEXIS 121213, at *19 (N.D. Cal. July 8, 2022) (observing that a forum's interest is low where plaintiff does not reside in the forum); *Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1380 (Fed. Cir. 2022) (stating that a forum's interest in adjudication is strongly dependent on whether the plaintiff resides in the forum).[4]

For at least the same reasons, the third *Burger King* factor—Red Hat's interest in obtaining convenient and effective relief—also weighs against an exercise of personal jurisdiction. Red Hat's principal place of business is in North Carolina, and Red Hat does not allege that it has any relevant employees or documents in California. In addition, Valtrus agrees—based on the facts presented above—that personal jurisdiction over Valtrus in this matter would be proper in Texas (Quinlan Decl. ¶ 14), which is a forum closer than California to North Carolina. Therefore, it cannot be said that litigating in this district would be required for Red Hat to obtain convenient and effective relief.

The fourth *Burger King* factor, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," necessarily includes resolution by negotiation and settlement. Therefore, it also weighs against an exercise of personal jurisdiction over Valtrus.

While the Federal Circuit has recently declared that there is no bright-line rule ***foreclosing*** the exercise of personal jurisdiction based on the direction of notice of infringement letters and related communications toward residents of a district (*see Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021)), courts have never held it reasonable to exercise personal jurisdiction over a patentee based on the type of contacts alleged here—*i.e.,* an indeterminate number of letters to

---

[4] Even though not properly alleged, Red Hat's tortious interference claim would have to presume that it owes defense and indemnity to the unnamed California customers, who Red Hat admits "do not use ***modified or customized*** versions of Red Hat Enterprise Linux." Complaint, ¶ 18 (emphasis added). Therefore, these unnamed customers (and, accordingly, California as well) have no real interest in the litigation. Also of note, the agreement allegedly tortiously interfered with has ***New York*** choice of law and a ***North Carolina*** forum. Complaint, Ex. 5.

unnamed residents in a district and certain follow-up communications. *See, e.g.*, *Xerox Corp. v. Monument Peak Ventures, LLC*, No. 20-CV-6263-FPG, 2021 U.S. Dist. LEXIS 165011, at *5–6, 10 (W.D.N.Y. Aug. 31, 2021) (finding exercise of specific personal jurisdiction over defendant in action seeking declaratory judgment of noninfringement unreasonable where minimum contacts were limited to licensing communications and discussions with in-district plaintiff and additional licensing communications with third parties in the district.); *cf. Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1373, 1380 (Fed. Cir. 2022) (indicating that this factor weighs against a finding of personal jurisdiction over a defendant attempting to settle disputes out of court, unless defendant's efforts go further, *e.g.*, by extending communications over the course of several years, reaching beyond license negotiations to negotiations for the sale of its patents, and asserting willful infringement of the patents at issue). The reason courts decline to find personal jurisdiction over a patent-right holder under facts such as here is that "a right holder should be permitted to send a notice letter to a party in a particular forum to try to settle disputes without being haled into court in that forum." *Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1377 (Fed. Cir. 2022).

The fifth *Burger King* factor, the shared interest of the several States in furthering fundamental substantive social policies, also weighs against exercising personal jurisdiction. There is no shared social policy interest of the several states that compels this court to burden defendant with an exercise of personal jurisdiction. To the contrary, the only shared social policy interest is the promotion of efficient out-of-court settlement without the risk of being haled into court wherever prospective licensees might be located.

Consistent with the above *Burger King* factor analysis, courts regularly conclude that it is unreasonable, and contrary to public interest, to exercise personal jurisdiction over foreign patentees merely based on licensing and other negotiations directed at private settlement of disputes. *Xerox Corp. v. Monument Peak Ventures, LLC*, No. 20-CV-6263-FPG, 2021 U.S. Dist. LEXIS 165011, at *5–6, 10 (W.D.N.Y. Aug. 31, 2021); *Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD, 2022 U.S. Dist. LEXIS 121213, at *32 (N.D. Cal. July 8, 2022); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1357 (Fed. Cir. 1998) (finding lack of personal jurisdiction over patentee who had sent notice of infringement and follow-up communications to

16

declaratory judgment plaintiff in district);  *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021) ("Red Wing remains correctly decided….").

### B.   Red Hat Has Failed to State a Claim for Intentional Interference with Contractual Relations[5]

Under California law, and the pleading standards applicable to this Court, Red Hat is required to allege facts plausibly establishing each element of its claim for intentional interference with contractual relations, *i.e.*, (1) a valid contract between Red Hat and one of its customers; (2) Valtrus's knowledge of this contract; (3) Valtrus's intentional acts designed to induce a breach or disruption of the contract; (4) actual breach or disruption of the contract; and (5) resulting damage. *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10, 94 Cal. Rptr. 3d 414, 421 (2009).

Red Hat has failed to plausibly allege facts establishing any of these elements.

Critically, Red Hat's Complaint fails to sufficiently identify a single contract between itself and any third-party customer in this district, or elsewhere, *i.e.*, Red Hat fails to plausibly plead the first element of its tort claim. Surely, Red Hat would be in possession of facts sufficient to plausibly establish this claim element, were such facts in existence, yet Red Hat's Complaint instead relies on vague and conclusory statements—*e.g.,* "Red Hat has maintained valid contracts with its customers regarding its Red Hat Enterprise Linux product"—that fall far short of the required pleading standard.

Having failed to identify the contract with which Valtrus has allegedly interfered, Red Hat cannot, as a matter of logic, assert facts sufficient to plausibly establish the remaining claim elements. However, Red Hat's Complaint is deficient for the following additional reasons.

Regarding the second element of the intentional interference claim, Valtrus's knowledge of this contract, Red Hat fails to plausibly allege that Valtrus had knowledge of any contract between Red Hat and any unnamed customer allegedly contacted by Valtrus. At most, Red Hat merely alleges that certain of its customers worldwide have opted into the Red Hat Open Source Assurance Program, requiring Red Hat to undertake certain patent infringement defense and indemnification obligations.

---

[5] Though Red Hat's Complaint asserts a claim for tortious interference with contractual relations, no such claim exists under California law. Therefore, for the analysis herein, Valtrus interprets Red Hat's claim as one for intentional interference with contractual relations under California law. There is no California action for "negligent interference with contractual relationship."  *See Davis v. Nadrich*, 174 Cal. App. 4th 1, 9, 94 Cal. Rptr. 3d 414, 421 (2009).

Complaint ¶¶ 23, 29. As expressly stated in the Red Hat Open Source Assurance Agreement (Complaint, Ex. 5), Red Hat's customers are not automatically enrolled in this program; rather, customers may voluntarily opt into the program by agreeing to certain terms, including the payment of certain fees and providing Red Hat with the right to control and conduct the defense of the claim for which indemnification is sought. Red Hat does not allege that Valtrus had knowledge of the identity of its unnamed customers that have opted into this program. And, in fact, Valtrus has no knowledge of whether any Red Hat customer in California has opted into the Red Hat Open Source Assurance Program. Quinlan Decl. ¶ 15. Therefore, Red Hat fails to plausibly allege Valtrus's knowledge of any contract. *Trindade v. Reach Media Grp., LLC*, No. 12-CV-4759-PSG, 2013 U.S. Dist. LEXIS 107707, at \*52-53 (N.D. Cal. July 31, 2013) (finding allegations suggesting only "generalized knowledge" of contracts between a publisher network and its advertisers insufficient to meet pleading standard for tortious interference of contractual relations claim).

Regarding the third element of the intentional interference claim, Red Hat fails to plausibly allege that Valtrus committed intentional acts designed to induce a breach or disruption of any presumed Red Hat contract—at least as a result of its failure to plausibly plead the first two elements: existence of a specific contract and Valtrus's knowledge of that contract. *See Trindade*, 2013 U.S. Dist. LEXIS 107707, at \*52-53 ("Because [the complaint] fails to sufficiently allege that [defendant] had anything more than generalized knowledge of any contractual relationships, it likewise fails to allege that [defendant] developed the requisite intent to disrupt those relationships.").

But, even assuming Valtrus had knowledge of a particular contract between Red Hat and one of its customers, sending a letter asserting that that contractee "need[s] a license to [a] Valtrus Patent" (Complaint ¶ 22) does not plausibly establish an "intentional act" of interference. Federal law preempts state law when it comes to sending such notices, and immunizes notices of infringement and offers to license from tortious interference claims so long as patent holder's infringement allegations are not "objectively baseless." *See e.g.*, *Matthews Intern. Corp. v. Biosafe Engineering, LLC*, 695 F. 3d 1322 (Fed. Cir. 2012) ("Federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation.") (internal quotations omitted); *Globetrotter Software, Inc. v. Elan Comput.*

18

*Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless."). Red Hat's claim for intentional interference with contractual relations does not allege facts that plausibly establish objective baselessness. Red Hat alleges only that Valtrus sent notices to Red Hat customers stating that Red Hat Enterprise Linux infringes several Valtrus patents "knowing that Red Hat Enterprise Linux is already subject to multiple licenses" (Complaint ¶¶ 30) that "limit and/or bar Valtrus from obtaining royalties from Red Hat and users of its software" (Complaint ¶ 21). Even if Valtrus had knowledge of any such licenses, Red Hat's complaint admits that such licenses may be *limited* and falls far short of plausibly alleging that any particular claim of infringement by a Red Hat customer is completely barred by any particular provision of a binding license agreement.

Further, it is illogical to infer Valtrus's intent to trigger a Red Hat contractee's breach or disruption of the Red Hat's Open Source Assurance Program—a program that grants the contractee "defense and indemnification rights" (Complaint ¶¶ 23, 29)—through Valtrus's alleged notice communications with such contractee. To the contrary, the logical deduction is that such contractees would fully comply with the terms of the Assurance Program upon receipt of such a notice from Valtrus. Red Hat's claim seems to be that Valtrus caused Red Hat customers to follow their contract and ask for an indemnity—a bargained-for cost and not an interference.

Regarding the fourth and fifth elements of the intentional interference claim, Red Hat fails to plausibly allege "actual breach or disruption of the contractual relationship" and "resulting damage." As an initial matter, Red Hat's Complaint does not identify which of its customers requested indemnification, or whether such customers reside in this district, deficiencies that independently render Red Hat's intentional interference claim deficient. Regardless, and as previously noted, Red Hat does not allege that any of its customers breached or otherwise sought to be excused from performance under any agreement as a result of any act of Valtrus. *See PNY Techs., Inc. v. Miller, Kaplan, Arase & Co, LLP*, No. 15-cv-01728-MMC, 2016 U.S. Dist. LEXIS 133837, at *31 (N.D. Cal. Sep. 28, 2016) (finding no breach or disruption where third-party contractee merely "sought to enforce the terms of the license agreement and included no claim seeking rescission or otherwise to

19

be excused from further performing thereunder.")   Red Hat can hardly claim "disruption" merely based on receiving claims for indemnification from unspecified customers, exactly as contemplated in the Open Source Assurance Program.

## V.      CONCLUSION

For the reasons described herein, Red Hat's Complaint should be dismissed in its entirety for reasons of lack of personal jurisdiction. In the alternative, Red Hat's claim for tortious interference with contractual relations should be dismissed for failure to state a claim.


Dated:  December 7, 2022                      Respectfully submitted,

SHEARMAN & STERLING LLP


By: */s/ Matthew G. Berkowitz*
      Matthew G. Berkowitz

*Attorney for Defendant*

1

**CERTIFICATE OF SERVICE**

2

    I certify that I caused the foregoing document to be electronically filed with the Clerk

3

of the Court for the United States District Court for the Northern District of California using the

4

CM/ECF System on December 7, 2022.

5

    I certify that all counsel of record who are deemed to have consented to electronic service are

6

being served on December 7, 2022 with a copy of this document via the Court's CM/ECF systems

7

per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight

8

delivery and/or First Class Mail on this date.

9

10

Dated:  December 7, 2022                          By: */s/ Matthew G. Berkowitz*_____

                                                   Matthew G. Berkowitz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS UNDER                    CASE NO.: 4:22-cv-05289-YGR
RULES 12(B)(2) AND 12(B)(6); MEMORANDUM